IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES C. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 05-cv-00452-JJF |
| | ) |
| SUPER FRESH FOOD MARKETS, INC., | ) |
| | ) |
| Defendant. | ) |

**COMPENDIUM OF UNREPORTED DECISIONS TO
DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT</u>**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Margaret M. DiBianca
William W. Bowser, Esquire (Bar I.D. 2239)
Margaret M. DiBianca, Esquire (Bar I.D. 4539)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601, 5008
Facsimile : (302) 576-3282, 3476
wbowser@ycst.com; mdibianca@ycst.com

**OF COUNSEL**
John P. Barry, Esquire
Greta Ravitsky, Esquire
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177
Telephone: (212) 351-3720
Facsimile: (212) 878-8720
jbarry@ebglaw.com; gravitsky@ebglaw.com
Attorneys for Defendant Super Fresh Markets, Inc.

DATED:    January 17, 2006

1 of 1 DOCUMENT

**HARRY PALMER, Plaintiff, v. JOHN SLAUGHTER, Defendant.**

**Civil Action No. 99-899-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2000 U.S. Dist. LEXIS 22118*

**July 13, 2000, Decided
July 13, 2000, Filed**

**DISPOSITION:** A permanent injunction was entered against Defendant. Judgment was entered in favor of Plaintiff. Plaintiff was awarded attorney fees and costs.

**COUNSEL:** [*1] Richard D. Kirk of MORRIS, JAMES, HITCHENS & WILLIAMS, Wilmington, Delaware. Of counsel: Patrick O. Keel of BAKER BOTTS LLP, Austin, Texas, Attorneys for Plaintiff Harry Palmer.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM OPINION

July 13, 2000.
Wilmington, Delaware.

**SLEET, District Judge.**

I. INTRODUCTION.

On December 17, 1999, Harry Palmer filed this action for, *inter alia*, copyright and trademark infringement against John Slaughter to obtain monetary and injunctive relief in addition to reasonable attorneys' fees and costs. *See 17 U.S.C.A. § 101 et seq. (West Supp. 2000); 15 U.S.C.A. §§ 1114 and 1125 (West Supp. 2000). Although Slaughter was served with a summons and a copy of the complaint, he failed to answer, move, or otherwise respond to the pleading. For this reason, the clerk of the court declared Slaughter in default on February 22, 2000. See Fed. R. Civ. P. 55(a)* (1999). Palmer subsequently moved for the entry of a default judgment against Slaughter. *See Fed. R. Civ. P. 55(b)* (1999). On May 17, 2000, the court held a hearing in order [*2] to determine whether the relief which Palmer was requesting was reasonable. After considering the arguments and evidence presented by Palmer at this hearing, the court concludes that, in addition to injunctive relief, monetary damages in the amount of $32,000 and reasonable attorneys' fees and costs in the amount of $8,000 and $352.72 are appropriate given the facts of this case. The following sections explain the basis for this decision in greater detail.

II. BACKGROUND.

According to the complaint, Palmer is an educational psychologist who created a program known as AVATAR which "teaches individuals how to effect positive changes in their lives through the management of their beliefs." People can enroll in the nine-day course for a fee of $2,000. To date, over 50,000 people have participated in the seminar.

The course itself is taught by individuals known as "masters," who lead participants through a series of self-awareness exercises prepared by Palmer. The exercises themselves are copyrighted. Furthermore, they are only disseminated to the masters, who all sign agreements to keep the printed materials confidential. Although some of the exercises are also handed out to [*3] seminar participants, these individuals are likewise required to sign a confidentiality agreement. They are further required to return the materials after the seminar has ended. Palmer has also obtained a trademark for the AVATAR name.

In May of 1999, Slaughter posted a message on the internet which offered to sell the AVATAR course materials for $100. Palmer immediately contacted Slaughter and told him to stop his activities. Although Slaughter promised to do so, it appears that he actually began selling these materials through an anonymous e-mail address. He also posted these materials on at least two different internet sites.

In November of 1999, after Palmer learned of these new activities, Slaughter was again told to cease and desist. In response, he sent Palmer an e-mail which admit-

ted that "posting the course materials . . . was wrong." Slaughter, however, refused to remove anything from the internet until he knew whether Palmer was going to pursue legal action. n1 This lawsuit followed.

> n1 Shortly after he learned of these postings, Palmer contacted the websites and requested that the materials be taken off the internet. The websites complied rather quickly. Nevertheless, it seems that, for a period of approximately one month, anyone was able to download the AVATAR works for free.

[*4]

The complaint includes claims for copyright and trademark infringement as well as for unfair competition. Primarily, Palmer seeks an injunction to prohibit the further dissemination of his materials. Palmer also requests statutory damages for each copyrighted material. *See 17 U.S.C.A. § 504* (West Supp. 2000). He further seeks treble damages on his claims of trademark infringement and unfair competition. *See 15 U.S.C.A. § 1117* (West Supp. 2000). Finally, Palmer requests reasonable attorney's fees and costs. *See 17 U.S.C.A. § 505* (West Supp. 2000).

Although Slaughter was served with a summons and a copy of the complaint on December 21, 1999, he did not answer, move, or otherwise respond to the pleading within the statutorily prescribed time period. *See Fed. R. Civ. P. 12(a)* (1999) (requiring a defendant to answer within twenty days after receiving the summons and copy of the complaint). Nor did Slaughter request an extension of this deadline. Consequently, the clerk of the court entered him in default on February 22, 2000. *See Fed. R. Civ. P. 55(a)*. Shortly thereafter, Palmer moved for the entry [*5] of a default judgment against Slaughter. *See Fed. R. Civ. P. 55(b)*.

III. DISCUSSION.

Because Slaughter has failed to answer, move, or otherwise respond to the complaint, the entry of a default judgment against him is appropriate. *See, e.g., Music City Music v. Alfa Foods, Ltd., 616 F. Supp. 1001, 1002 (E.D. Va. 1985)*. When a default judgment is entered on the well pled allegations of a complaint, the defendant's liability is established. *See Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 658 (S.D.N.Y. 1996); Schwartz-Liebman Textiles v. Last Exit Corp., 815 F. Supp. 106, 107 (S.D.N.Y. 1992)*. The court, however, is required to calculate the appropriate amount of damages. It cannot simply accept the plaintiff's representations on this subject as being true. *See Broadcast Music, 919 F. Supp. at 658; Schwartz-Liebman, 815 F. Supp. at 107*.

In his motion for a default judgment, n2 Palmer requests the maximum amount of statutory damages for the infringement of his two copyrighted materials (*i.e.*, $150,000 per work) in addition to monetary damages for the eight instances [*6] of alleged trademark infringement. *See 17 U.S.C.A. § 504; 15 U.S.C.A. § 1117*. Palmer further seeks to recover reasonable attorneys' fees and costs. *See 17 U.S.C.A. § 505*.

> n2 Originally, the motion for a default judgment only requested statutory damages for the instances of copyright infringement. However, at the hearing on this motion, the court allowed Palmer to amend his motion for a default judgment so that he could seek relief for trademark infringement and unfair competition under the Lanham Act.

On May 17, 2000, the court held a hearing to determine whether Palmer's requests were reasonable. *Cf. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)* (noting that even though a hearing might not be required, the court "should take the necessary steps to establish damages with reasonable certainty"); *accord James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993)*. [*7] After considering Palmer's arguments and the evidence which he presented at the hearing, the court concludes that the following relief is warranted: (1) an injunction which prohibits Slaughter from continuing to infringe on Palmer's intellectual property rights and compels the return of the AVATAR materials; (2) statutory damages in the amount of $20,000 for the infringement of Palmer's copyrights; (3) treble damages in the amount of $12,000 under the Lanham Act; and (4) attorneys' fees and costs in the amount of $8,000 and $352.72. The following sections explain the bases for this ruling more thoroughly.

A. Injunctive Relief.

Given the allegations of the complaint, there can be no question that Slaughter knowingly infringed on Palmer's intellectual property rights by offering the AVATAR materials for sale over the internet and posting them on two separate websites. In fact, in one of the e-mails that he sent Palmer, Slaughter admitted that what he was doing was "wrong." Furthermore, Slaughter appears to have engaged in this conduct repeatedly, even after being told to cease and desist. Therefore, Palmer is entitled to a permanent injunction under *17 U.S.C.A. § 502* [*8] (a) to prevent Slaughter from engaging in this type of conduct in the future. *See, e.g., Broadcast Music, 919 F. Supp. at 659; JoBete Music Co. v. Hampton, 864 F. Supp. 7, 9 (S.D. Miss. 1994); Music City, 616 F. Supp. at 1002-03*. In addition, the court will order Slaughter to return all orig-

inals and copies of these works to Palmer. The court will also require Slaughter to delete or erase any copies of the works which he may have in his possession. Finally, the court will require Slaughter to provide Palmer with a list of those individuals who received copies of the AVATAR works after responding to his internet advertisements.

B. Statutory Damages for Copyright Infringement.

Under *17 U.S.C.A. § 504*(c), Palmer is entitled to "recover, instead of actual damages and profits, an award for infringements in the action, with respect to any one work, for which any one infringer is liable individually . . . in a sum not less than $750 or more than $30,000 as the court considers just." *17 U.S.C.A. § 504*(c)(1). However, if the "infringement was committed willfully, the court in its discretion may [*9] increase the award of statutory damages to a sum of not more than $150,000." *Id.* at § 504(c)(2). As the D.C. Circuit has explained, "statutory damages are to be calculated according to the number of works infringed, not the number of infringements." *See Walt Disney Co. v. Powell, 283 U.S. App. D.C. 111, 897 F.2d 565, 569 (D.C. Cir. 1990); accord Mason v. Montgomery Data, Inc., 967 F.2d 135, 143-44 (5th Cir. 1992)* ("If a plaintiff proves that one defendant committed five separate infringements of one copyrighted work, that plaintiff is entitled to only one award of statutory damages . . . ."). In this case, Palmer seeks the maximum amount of statutory damages ($ 150,000) for Slaughter's allegedly willful infringement of each of the two copyrighted AVATAR works.

An award of statutory damages serves two purposes. It compensates the plaintiff for the infringement of its copyrights while, at the same time, serving as a deterrent by punishing the defendant for its unlawful conduct. *See Broadcast Music, 919 F. Supp. at 659; Schwartz-Liebman, 815 F. Supp. at 108; Music City, 616 F. Supp. at 1003.* When [*10] determining the appropriate level of statutory damages, the court must consider a number of factors, including the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, and the defendant's state of mind. *See Broadcast Music, 919 F. Supp. at 659-60; JoBete Music, 864 F. Supp. at 9; Almo Music, 798 F. Supp. 392 at 394.* Normally, it is the blameworthiness of the defendant which weighs the heaviest in the court's analysis. *See Almo Music, 798 F. Supp. at 394* (citing *Milene Music, Inc. v. Gotauco, 551 F. Supp. 1288, 1296 (D.R.I. 1982)).*

Here, the court has no doubt that Slaughter has willfully infringed on Palmer's copyrights. Given the allegations of the complaint, which must be taken as true given the default, Slaughter was repeatedly told to stop advertising the AVATAR materials for sale on the internet. Nevertheless, he refused to do so. In fact, while Slaughter initially promised to cease his infringing activities, he actually continued to offer the copyrighted works for sale through an anonymous e-mail address. As a consequence, at least two copies of the work were [*11] sold. In addition, Slaughter posted these copyrighted materials on two different web sites. And, in a subsequent e-mail to Palmer, Slaughter admitted that "posting the course materials . . . was wrong." Thus, it is clear that Slaughter was acting willfully and knowingly when he used the internet to advertise, sell, and post the AVATAR materials.

However, it is equally clear that an award of $150,000 per infringed work (for a total statutory damages award of $300,000) is excessive. *Cf. Joe Hand Promotions v. Burg's Lounge, 955 F. Supp. 42, 44 (E.D. Pa. 1997)* (requiring evidence of "egregious circumstances" before awarding the maximum amount of statutory damages); *accord Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993)* (declining to award the maximum amount of statutory damages since there was no evidence of "repeated violations over extended periods of time, substantial unlawful monetary gains . . . or . . . any significant actual damages to the plaintiff"); *see also Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc., 602 F. Supp. 151, 155-56 (S.D.N.Y. 1984)* (awarding the maximum amount of damages [*12] under the statute because the defendant had been named in a number of similar lawsuits and, thus, could not be permitted to "continue as one of the 'bad boys' of the textile industry").

First, although Slaughter offered the two AVATAR works for sale over the internet during a seven month period in late 1999, his asking price was only $100. Thus, he did not profit greatly from these sales. Second, as Palmer conceded at the hearing on his motion for a default judgment, he cannot show that attendance at his seminars has declined by any noticeable extent because of Slaughter's activities. Consequently, it does not seem as if Palmer has lost a large amount of revenue as a result of Slaughter's conduct. Third, the injunctive relief which Palmer has obtained would seem to go a long way to recapturing control over the copyrighted materials. Since it is this high degree of control which seems to be largely responsible for the success of the AVATAR program, a statutory damage award in the hundreds of thousands of dollars would appear to be inappropriate.

Nevertheless, the court does recognize the need to compensate Palmer for his losses and to deter Slaughter and others from violating the [*13] copyright laws in the future. *See Broadcast Music, 919 F. Supp. at 659; Schwartz-Liebman, 815 F. Supp. at 108; Music City, 616 F. Supp. at 1003.* As several district courts have observed, it is important to place infringers on notice that "it costs less to obey the copyright laws than to violate them." *See*

*Broadcast Music, 919 F. Supp. at 660* (quoting *Rodgers v. Eighty Four Lumber Co., 623 F. Supp. 889, 892 (W.D. Pa. 1985)*); accord *Almo Music, 798 F. Supp. at 394* (quoting *Music City, 616 F. Supp. at 1003*); see also *JoBete Music, 864 F. Supp. at 10* ("In order to serve as a deterrent to copyright violators . . . it is deemed necessary and reasonable to allow recovery in excess of the license rate . . . .").

Here, the AVATAR materials are normally made available only during Palmer's nine-day seminar. Of course, in order to take this course, an individual must pay $2,000. Furthermore, this person cannot take the exercises home after the program ends. Instead, they must be left with the masters. In addition, as previously discussed, it seems that at least [*14] two people bought the copyrighted works from Slaughter and, thus, probably did not attend the AVATAR course. Also, the court finds it especially troubling that Slaughter posted the AVATAR materials on two different websites for anyone to download for free. Fortunately for Palmer, these internet sites agreed to remove the postings shortly after they were notified of the situation.

Under these circumstances, the court believes that a statutory damages award of $10,000 per work (for a total of $20,000) is warranted. Although the copyrighted materials are separate works, they are both used during the AVATAR seminar. As a result, the $2,000 registration fee would seem to cover both of them. Thus, a $20,000 damage award, which is ten times the cost of the AVATAR course, would seem to sufficiently compensate Palmer for any losses which he may have incurred as a result of Slaughter's conduct (especially since there is no evidence of any actual loss to Palmer and the profits which Slaughter reaped from his limited sales were far below the price of the seminar). In addition, a $20,000 damage award would appear to adequately punish Slaughter for his actions and, thus, deter both him and [*15] others from violating the copyright laws in the future.

C. Monetary Damages for Trademark Infringement and Unfair Competition.

Palmer has also asked to recover damages for the eight instances of alleged trademark infringement and unfair competition alleged in the complaint and described in the declaration which he recently submitted to the court. *See 15 U.S.C.A. § 1117.* In particular, Palmer is seeking to recover for the four times that Slaughter advertised the AVATAR materials for sale on the internet, the two instances when he sold these copyrighted works over the internet, and the two times that the materials were posted on different web sites. According to the complaint, these activities are "likely to cause confusion, mistake, and deception as to Slaughter's connection or affiliation with Palmer . . . ."

In *Nintendo of Am., Inc. v. Dragon Pacific Intn'l*, the Ninth Circuit held that it is permissible to award statutory damages under the Copyright Act and profits under the Lanham Act when the defendant's conduct constitutes two wrongful acts, such as selling copyrighted materials under another's trademark. *40 F.3d 1007, 1010-11 (9th Cir. 1994).* [*16] As the *Nintendo* court explained,

> If [the defendant] had sold the cartridges without representing that they were Nintendo products, he would have committed the wrong of copyright infringement. Or, if [the defendant] had represented that the cartridges were Nintendo products even though they contained no Nintendo games, he would have committed the wrong of trademark infringement. Put together, selling the cartridges may have been one act, but it was two wrongs.

*Id.*

In this case, like the defendant in *Nintendo*, Slaughter not only violated Palmer's copyrights by selling the AVATAR works, he also violated Palmer's trademark rights by selling the copyrighted materials under the AVATAR name. Therefore, Palmer is entitled to recover the profits that he lost as a result of Slaughter's conduct. *See id. at 1010.*

On the issue of damages, at least two individuals purchased the AVATAR materials from Slaughter over the internet. Slaughter appears to have earned $200 from these sales. However, given the price of his seminar, Palmer likely lost $4,000 as a result of Slaughter's activities. Furthermore, Slaughter's conduct was willful, which requires [*17] a trebling of this loss. *See 15 U.S.C.A. § 1117*(b). For these reasons, the court will award Palmer an additional $12,000 for the violation of his trademark rights.

D. Attorneys' Fees and Costs.

The court will also award Palmer reasonable attorneys' fees and costs incurred during this action. *See 17 U.S.C.A. § 505.* As other district courts have explained, an award of reasonable fees and costs tends to be the rule rather than the exception in actions for copyright infringement. *See JoBete Music, 864 F. Supp. at 10; Almo Music, 798 F. Supp. at 394.* When determining an appropriate amount to award, the court should again take into account the twin considerations of compensation and deterrence. *See Broadcast Music, 919 F. Supp. at 660-61.* In particular, when there appears to be significant merit to the plain-

tiff's case, the court should focus its analysis on whether the defendant was acting intentionally, willfully, or in bad faith. *See id. at 661.*

Here, the content of Slaughter's internet advertisements demonstrate the willfulness of his conduct. For example, one [*18] of his messages read: "I have the complete AVATAR course available in e-mail format for anyone that would like to save the $2,000 expense of taking it. . . . I am offering the complete course for $100.00; plus, you will always have the materials to . . . deepen your experience. When you take the course, they don't let you taken anything with you." These words could not make Slaughter's intent any more clear. He was deliberately trying to profit from Palmer's work by selling the AVATAR materials at substantially reduced prices over the internet.

Furthermore, after posting these internet messages, Slaughter was repeatedly warned to cease his activities. However, he instead attempted to conceal his efforts to sell the AVATAR works by employing an anonymous e-mail address. Later, he simply stated that even though he was aware that his conduct was wrong, he would not cease his activities until he knew whether Palmer was going to bring suit. Given these facts, an award of reasonable attorneys' fees and costs is appropriate. The request for $10,186.00 in fees is somewhat excessive.

Admittedly, the vast majority of these expenses seem proper. For example, the attorneys spent nearly fifteen [*19] hours on factual and legal research prior to filing the complaint. The lawyers spent almost as much time (a little more than fourteen hours) preparing for the entry of a default judgment against Slaughter. And, nearly seven hours were spent communicating with the websites in an effort to convince them to remove the AVATAR materials which Slaughter has posted. Respectively, the attorneys billed approximately $3,675 and $4,365 in fees in addition to $1,025 in costs for these services (for a total of $9,065).

Nevertheless, there appear to be some duplicative charges on the billing statements submitted to the court. For example, communications between local and lead counsel resulted in more than $800 in fees. In addition, lead counsel billed over $740 for advising Palmer about Brazilian trademark rights which seem completely unrelated to this lawsuit. Taking these factors into account, the court will award Palmer $8,000 in attorneys' fees. Lead counsel shall receive $6,500 of this allocation, and local counsel shall receive the $1,500 balance.

Finally, Palmer has requested $352.72 in costs. The filing fee and cost of service account for roughly one-half of this amount. The [*20] costs requested by Palmer do not appear to be excessive. The court will, therefore, award costs in the full amount.

V. CONCLUSION.

In order to adequately compensate Palmer for the violation of his copyrights and to sufficiently punish Slaughter for his misconduct, the court will afford Palmer the injunctive relief which he requests in addition to awarding him statutory damages under the Copyright Act in the amount of $20,000. The court will also award Palmer treble damages in the amount of $12,000 under the Lanham Act for Slaughter's use of the AVATAR name. Finally, the court will award Palmer attorneys' fees and costs in the amount of $8,000 and $352.72, respectively. The court will issue an order to this effect in conjunction with this opinion.

**ORDER**

For the reasons stated in the court's memorandum opinion of this date, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:

1. John Slaughter ("Slaughter") and his agents, servants, and employees, and all other persons in active concert or participation with him, are PERMANENTLY ENJOINED from copying, reproducing, displaying, distributing, or otherwise infringing in any manner the copyrights which Harry Palmer ("Palmer") [*21] has in "The AVATAR Course Section II: The Exercises" and "The AVATAR Course Section III: The Procedures" (collectively, "the works"), including aiding or inducing others in any such activity;

2. Within ten (10) days of the date of this order, Slaughter and his agents, servants, and employees, and all other persons in active concert or participation with him, shall deliver to Palmer any and all originals, copies, facsimiles, or duplicates of the works;

3. Within ten (10) days of the date of this order, Slaughter and his agents, servants, and employees, and all other persons in active concert or participation with him, shall delete all electronic copies of the works in their possession, custody, or control;

4. Within ten (10) days of the date of this order, Slaughter and his agents, servants, and employees, and all other persons in active concert or participation with him, shall provide Palmer with a list of the names and addresses of all of the individuals who received copies of the AVATAR works as a result of the infringing conduct;

5. Slaughter and his agents, servants, and employees, and all other persons in active concert or participation with him, are PERMANENTLY ENJOINED from [*22] infringing on Palmer's AVATAR trademark or unfairly

competing with Palmer in any manner, including aiding or abetting others in any such activity;

6. Within thirty (30) days of the date of this order, Slaughter shall file with the court and serve upon Palmer a report, made in writing and sworn to under oath, which sets forth in detail the manner and form in which Slaughter has complied with the injunction and order of this court;

7. Pursuant to *17 U.S.C.A. § 504* (West 2000) and *15 U.S.C.A. § 1117* (West 2000), judgment in the amount of $32,000 be and hereby is ENTERED in favor of Palmer against Slaughter for his acts of copyright and trademark infringement;

8. Pursuant to *17 U.S.C.A. § 505* (West 2000), attorneys' fees in the amount of $6,500 for lead counsel and $1,500 for local counsel are AWARDED in favor of Palmer and against Slaughter;

9. Pursuant to *17 U.S.C.A. § 505* (West 2000), costs in the amount of $352.72 are TAXED against Slaughter.

Date: July 13, 2000

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

1 of 1 DOCUMENT

TONY A. WILSON, Plaintiff, v. PINKERTON, INC., DENNIS R. BROWN, DAVID MERKOVICH, KENNETH E. FORD, DAVE STEBBINS, ANTHONY DAUNORAS, REID ADAMS, and LEN KUMINSKI, Defendants.

Civil Action No. 99-896 JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 4929

**March 23, 2004, Decided**

**DISPOSITION:** [*1] Defendant's Motion To Dismiss was denied.

**COUNSEL:** Tony A. Wilson, Plaintiff, Pro se, Jacksonville, Florida.

David E. Brand, Esquire of PRICKETT, JONES & ELLIOT, P.A., Wilmington, Delaware.

Of Counsel: James A. Rothschild, Esquire of ANDERSON, COE & KING, LLP, Baltimore, Maryland, Attorneys for Defendant Pinkerton, Inc.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:** Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is Defendant's Motion To Dismiss. (D.I. 32.) For the reasons discussed, the Court will deny the Motion.

### BACKGROUND

Plaintiff filed the instant lawsuit on December 16, 1999, alleging employment discrimination. The initial Complaint was never served on any of the eight Defendants. The Court granted Plaintiff leave to proceed in forma pauperis on February 22, 2002. (D.I. 5.) Plaintiff filed an Amended Complaint on April 4, 2002, which was served on Defendant Pinkerton, Inc. ("Pinkerton"). The Court entered an Order on January 15, 2003, setting the fact discovery deadline for March 20, 2003, and scheduled a status conference for March 27, 2003. Plaintiff failed to appear at [*2] the status conference. On April 4, 2003, the Court entered an Order directing Plaintiff to provide a written explanation for his failure to respond to Pinkerton's discovery requests and failure to appear at the March 27 status conference. On April 5, 2003, Plaintiff informed the Court by letter (the "April 5th letter") that his failure to appear at the status conference was due to the fact that he did not receive a copy of the Court's January 15, 2003, Order. In addition, in the April 5th letter Plaintiff stated that he responded to Pinkerton's discovery requests on March 24, 2003, and supplemented his responses on April 4, 2003.

On August 7, 2003, Pinkerton sent Plaintiff a notice of deposition, scheduling Plaintiff's deposition for September 4, 2003, via Federal Express. Plaintiff's wife refused receipt of the notice. (D.I. 33 at Ex. B.) Pinkerton subsequently re-noticed the deposition by registered mail. However, the registered mail was returned with stamps indicating that the mail was unclaimed. Id. at Ex. C. Plaintiff did not appear at the deposition Pinkerton scheduled for September 4, 2003. By an October 8, 2003, Memorandum Order (D.I. 30), the Court granted Pinkerton's [*3] request to file a motion to dismiss for failure to prosecute.

### DISCUSSION

#### I. Parties' Contentions

Pinkerton contends that the Court should grant its Motion to Dismiss with prejudice because Plaintiff has failed to prosecute his claim, appear at his deposition, or cooperate in Pinkerton's efforts in discovery. Pinkerton also contends that the numerous periods of extended inactivity in this case warrant dismissal for failure to prosecute. In addition, Pinkerton contends that Plaintiff has not served the seven individually named Defendants with the Amended Complaint, and thus, the Court should dismiss those Defendants pursuant to *Rule 4(m) and 41(b)*.

Plaintiff responds that his failure to attend the status conference was attributable to the fact that he did not receive the Court's Order scheduling the conference.

Case 1:05-cv-00452-JJF   Document 20   Filed 01/17/2006   Page 9 of 10

Page 2
2004 U.S. Dist. LEXIS 4929, *3

Plaintiff contends that he has not requested discovery from the Defendants because there was a motion to dismiss pending before the Court. Plaintiff maintains that he believed it was improper to request discovery while a motion to dismiss was pending. Further, Plaintiff contends that he did serve the individually named Defendants by filing the U.S. Marshall-285 forms [*4] with the Clerk of the Court.

## II. Applicable Legal Principles

Dismissal with prejudice is a harsh remedy "only appropriate in limited circumstances." *Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund, 29 F.3d 863, 870 (3d Cir. 1994)*. Courts should be cautious in granting dismissals "'because an order of dismissal deprives a party of its day in court[.]'" Id. (quoting *Scarborough v. Eubanks, 747 F.2d 871, 875 (3d Cir. 1984))*. Third Circuit precedent requires courts to evaluate six factors when determining whether a complaint should be dismissed with prejudice for failure to prosecute. Among these factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984)* [*5] (emphasis in original). When evaluating the Poulis factors, courts should resolve doubts in favor of deciding a case on the merits. *Adams, 29 F.2d at 870*. However, each factor need not be present in order for dismissal to be warranted. *Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003)* (citing *Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988))*.

## III. Decision

A. Whether The Court Should Dismiss Pinkerton For Failure To Prosecute

With respect to the first *Poulis* factor, the Court finds that any delays or failures to comply with discovery obligations or court orders are in most instances attributable to Plaintiff. Because Plaintiff is proceeding pro se, any failure to prosecute cannot be blamed on inattentive counsel. See *Emerson v. Thiel College, 296 F.3d 184 (3d Cir. 2002)*.

Second, the Court finds that Pinkerton is minimally prejudiced by Plaintiff's failure to efficiently prosecute his case. Pinkerton's claim of prejudice is based upon the fact that the alleged events occurred in 1997, and therefore, Pinkerton contends that it will be unfairly prejudiced because it must defend against [*6] events that took place seven years ago. (D.I. 33 at 10.) Although the Court recognizes the difficulty in litigating cases involving events long past, the Court concludes that such prejudice alone does not substantially weigh in favor of dismissal because Pinkerton does not assert that Plaintiff's delay resulted in incurable burdens and costs, or caused it to suffer the "irretrievable loss" of key evidence. *Adams, 29 F.3d at 873-74*.

Looking to the third and fourth *Poulis* factors, the Court observes that there is evidence of dilatoriness n1; however, the Court cannot find that Plaintiff's actions were, for the most part, willful or in bad faith. Although the Court is mindful that Plaintiff is not relieved of his obligations under the Federal Rules or from complying with court orders merely because he is proceeding pro se, in this case, Plaintiff has offered reasonable explanations for two of the most egregious instances of noncompliance. Plaintiff's explanation for his failure to appear at the *Rule 16* conference on March 20, 2003, was that he did not receive notice of the hearing. Taken at face value, this is not evidence of bad faith or willfulness. Next, even [*7] though Plaintiff's failure to appear at his deposition appears to be the result of his refusal to accept delivery of Pinkerton's noticing of his deposition (D.I. 28, 33 at Ex. C), evaluating Plaintiff's actions in favor of deciding this case on the merits, see *Adams, 29 F.2d at 870*, the Court cannot find that Plaintiff's failure to appear at his deposition, the date and time of which he had no knowledge of, was "the type of willful or contumacious behavior which [can be] characterized as 'flagrant bad faith[.]'" Id. at 875 (quoting *Scarborough v. Eubanks, 747 F.2d 871, 875 (3d Cir. 1984))*.

> n1 There are substantial periods of inactivity following Plaintiff's filing of his initial complaint on December 16, 1999. Following the Court's grant of in forma pauperis status on February 22, 2002, there was no activity until April 4, 2002, when Plaintiff filed his Amended Complaint. Between August 21, 2002, and April 10, 2003, Plaintiff again took no action in the prosecution of his case. It was not until the Court, in an April 4, 2003, Order directed Plaintiff to provide a written explanation for his failure to appear at the status conference and failure to participate in discovery that Plaintiff took any affirmative steps toward the prosecution of his case.

[*8]

Next, the Court concludes that the fifth factor weighs in favor of dismissal. Because the Court granted Plaintiff in forma pauperis status, an assessment of attorneys' fees and costs against Plaintiff for his failure to cooperate in discovery is not feasible. *Emerson, 296 F.3d at 191.* Further, on the undeveloped record in this case, the Court is unable to craft an appropriate evidentiary sanction for Plaintiff's delays.

Turning to sixth factor, the Court cannot reach a determination of whether the meritoriousness of the parties' claims or defenses weighs in favor or against dismissal. As Pinkerton states in its papers, at this stage of the proceedings the undeveloped record prevents any such findings. (D.I. 33 at 11.)

After weighing the *Poulis* factors, the Court concludes that the factors weigh against dismissal. Although the Court finds that Plaintiff is responsible for the delays in this case, that there is a history of dilatoriness, and that there is an absence of alternative sanctions, the Court concludes that the presumption against dismissal requires the Court to deny the instant motion. The Court's findings that Pinkerton will not suffer unfair prejudice [*9] and that Plaintiff did not act willfully or in bad faith in failing to cooperate with the Court's orders or the Federal Rules, persuades the Court that the harsh penalty of dismissal with prejudice is inappropriate at this time. In the Third Circuit, "dismissal must be a sanction of last, not first, resort." *Poulis, 747 F.2d at 869*. And, as Plaintiff has represented to the Court that he will agree with Pinkerton to a mutually acceptable time for his deposition and fully comply with his obligations under the Federal Rules and Court orders, the Court will grant him a final opportunity to properly prosecute his case.

B. Whether The Court Should Dismiss The Individual Defendants

Plaintiff contends that he filed with the Clerk of the Court U.S. Marshall-285 forms for each Defendant; however, the Court's docket reveals that Plaintiff only served Defendant Pinkerton. *Rule 4(m) of the Federal Rules of Civil Procedure* provides that "if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or its own initiative after notice to the plaintiff, shall [*10] dismiss the action without prejudice as to that defendant ...; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." *Fed. R. Civ. P. 4(m).*

Because the Court has no evidence that Plaintiff properly served the individual Defendants with his Amended Complaint, the Court directs Plaintiff to provide the Court with evidence of his return of the U.S. Marshall-285 forms to the Clerk or to show good cause for his failure to serve each Defendant. If Plaintiff does not provide the evidence of his return of the U.S. Marshall-285 forms or demonstrate good cause for failure to serve, the Court will dismiss the individual Defendants.

In sum, the Court concludes that dismissal is not warranted at this time; however, failure of the Plaintiff to diligently pursue his claims in the future will be evaluated against the backdrop of the circumstances the Court has reviewed here.

An Order consistent with this Opinion will be entered.

**ORDER**

At Wilmington, this 23rd day of March 2004, for the reasons discussed in the Opinion issued this date;

NOW THEREFORE, IT IS HEREBY [*11] ORDERED that Defendant's Motion To Dismiss (D.I. 32) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE